**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **RICHARD ARJUN KAUL,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-cv-3050 (TSC) |
| | ) | |
| **FEDERATION OF STATE MEDICAL** | ) | |
| **BOARDS,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs Richard Kaul and Arnold Feldman, proceeding *pro se*, have sued over thirty

companies, medical boards, and individuals, alleging violations of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), the Clayton Act, the Sherman Act, and the Due Process

Clause of the United States Constitution.  Of these, twenty-six defendants[1] have had the claims

against them transferred to the District of New Jersey and three more (former Defendants

Richard Stanley, Mississippi Board of Medical Licensure, and Medical Board of California) have

had the claims against them dismissed by the court.  *See* ECF No. 149.  Currently pending before

the court are a Motion to Dismiss brought by the Louisiana Board of Medical Examiners

("LSBME"), Dr. Cecilia Mouton, and Dr. John Michael Burdine, ECF No. 88; a Motion to Set

---

[1] Plaintiffs' claims against the following defendants were transferred: GEICO, GEICO
Indemnity, GEICO General Insurance Co., GEICO Casualty, Fourth Edition Inc. f/k/a North
Jersey Media Group Inc., Lindy Washburn, Dr. Peter Staats, the American Society of
Interventional Pain Physicians, the New Jersey Board of Medical Examiners, Christopher J.
Christie, Dr. Andrew Kaufman, Doreen Hafner, Eric Kanefsky, Atlantic Health System, Dr.
Robert F. Heary, Dr. Marc Cohen, John P. Di Iorio, TD Bank, NA, Congress of Neurological
Surgeons, Howard Solomon, Gregory Przybylski, Steven Lomazow, Hackensack University
Medical Center, Robert Garrett, Allstate Insurance Company, and Richard Crist.

Aside Default and Dismiss Plaintiffs' Complaint brought by the Federation of State Medical Boards ("FSMB"), ECF No. 127; and a Declaration in Opposition to Request for Entry of Default and Requesting Dismissal Against Daniel Stolz. ECF No. 133. Feldman opposes LSBME, Mouton, and Burdine's motion to dismiss.[2] Kaul opposes Defendant Stolz's motion to dismiss.[3] Neither Plaintiff filed an opposition to FSMB's motion. For the reasons set forth below, the court will GRANT each of the three pending motions to dismiss.[4]

The court will also address the claims against four additional defendants—the Pennsylvania Medical Board ("PMB"), Lewis Stein, Scott Metzger, and United States District Judge Brian R. Martinotti—*sua sponte*. For the reasons set forth below, the court will DISMISS the claims against each of these Defendants.

## I. BACKGROUND

### A. <u>**Factual Background**</u>

The facts of this case are summarized at greater length in this court's prior opinion and are therefore only briefly reiterated here. *See* ECF No. 150.

---

[2] An individual litigant may proceed in federal court on behalf of themselves or represented by properly admitted counsel, *see* 28 U.S.C. § 1654, but a layperson cannot represent another person in a court proceeding. *See Georgiades v. Martin–Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984). Although his name is listed, Kaul did not sign the opposition to the motion to dismiss filed by Defendants LSBME, Mouton, and Burdine, and no counsel has appeared on his behalf as to those motions. Feldman, as a *pro se* plaintiff, cannot represent Kaul. Accordingly, the court finds that Kaul did not respond to this motion.

[3] Feldman did not sign the opposition to the motion to dismiss filed by Defendant Stolz, and no counsel has appeared on his behalf as to the motion. Kaul, as a *pro se* plaintiff, cannot represent Feldman. Accordingly, the court finds that Feldman did not respond to this motion.

[4] The court has considered the following responses filed by Plaintiffs: ECF No. 111, ECF No. 156.

1. <u>Kaul</u>

Richard Kaul was formerly a board-certified anesthesiologist licensed to practice medicine in New Jersey.  ECF No. 1, Compl. ¶ 21.  He purports to be a resident of New York.[5] *Id.* ¶ 21.  Kaul's New Jersey medical license was revoked in 2014 for performing spine surgery on eleven patients without "proper training and experience," which "constituted gross and repeated malpractice, negligence, and incompetence."  *Kaul v. Christie* ("*Kaul I*"), No. 2:16-cv-2364, 2017 WL 2953680, at *1 (D.N.J. June 30, 2017).  Kaul claims Defendants have engaged in a massive conspiracy to "permanently eliminate [him] from the practice of medicine anywhere in the world."[6]  Compl. at 19.

In Count III, Kaul claims that several Defendants conspired to destroy his reputation and medical practice so insurance companies could avoid paying him for services rendered to patients.  *Id.* ¶ 362.  Included amongst the individuals and entities named in this claim are Defendant Stolz, an attorney whose law firm served as the Chapter 7 bankruptcy trustee's counsel when Kaul's business entered into bankruptcy proceedings, *see Id.* ¶ 359; ECF No. 133, Ex. B, Bankr. Op, and Judge Martinotti, who presided over cases Kaul filed in the District of New Jersey.[7]

––––––––––––––––––––––

[5]  Although Kaul claims to be a resident of New York, the summonses provide a New Jersey address, and, on at least one occasion, documents mailed to Kaul by this court at his New York address of record were returned as undeliverable.  *See* Compl.; ECF No. 4; ECF No. 5.

[6]  Kaul initially brought five claims independently and three claims with Feldman.  Among Kaul's claims, Counts III, IV, and IX, discussed further below, relate to the Defendants addressed in this opinion.

[7]  On June 5, 2019, Kaul's four related cases then before the District of New Jersey were each reassigned to Judge Martinotti upon Judge Kevin McNulty's recusal after Kaul moved for his disqualification.  On October 7, 2019, a mere four months after the cases were reassigned, Kaul moved to disqualify Judge Martinotti, alleging that he had admitted to participation in "schemes

Kaul has also sued Stolz in separate proceedings in the U.S. Bankruptcy Court for the District of New Jersey. *See* Bankr Op. Kaul claims Stolz was part of a large conspiracy against him and, pursuant to that conspiracy, the bankruptcy Trustee failed to collect debts that Kaul believes he was owed from several insurance companies. Compl. ¶ 363, *Stolz v. Kaul*, No. 2:20-ap-1011-JKS, (Bankr. D.N.J.). Kaul has been permanently enjoined from suing Stolz without leave of the U.S. Bankruptcy Court for the District of New Jersey. *In re N.J. Spine & Rehab., P.C.*, No. 2:13-bk-23366-JKS (Bankr. D.N.J. February 10, 2020).

In Count IV, Kaul alleges RICO violations by an additional group of seven Defendants who purportedly conspired to eliminate him from the practice of medicine, to eliminate him from competing in that field, and to destroy his professional reputation. Compl. ¶ 459. Included amongst the individuals and entities named in this claim is Defendant Stein, a New Jersey-based medical malpractice attorney. *Id.* ¶ 32.

 2. Feldman

Arnold Erwin Feldman is a resident of Florida and was formerly licensed to practice medicine in Louisiana, Alabama, Mississippi, and California. Compl. ¶ 22. In 2013, Feldman was investigated for violating the Louisiana Medical Practice Act. *Id.* ¶¶ 222–44. Following a three-day adjudicatory hearing before a panel of four physicians, LSBME found Feldman had violated the Louisiana Medical Practice Act, fined him, and suspended his medical license. *Id.*; *see also Feldman v. La. State Bd. of Med. Exam'rs*, No. 2018-ca-0033, 2018 WL 5830390 (La.

─────────────────────

of bribery, judicial corruption, and ex-parte communications." *See* Motion for Judicial Disqualification of Judge Martinotti by Richard Arjun Kaul, *Kaul I*, No. 2:16-cv-2364, ECF No. 398. The Complaint in this case was filed on October 1, 2019, Judge Martinotti received purported service of process on either December 16, 2019, or July 22, 2020, *see* Default Mot. at 15, 17, and Kaul's cases in the District of New Jersey were reassigned on December 19, 2019.

Ct. App. Nov. 7, 2018) (affirming sanctions against Feldman). Feldman contends that the 2013 investigation and the resultant administrative proceeding violated his right to due process. Compl. ¶¶ 222–44. In particular, he alleges that LSBME, its then-President, Burdine, and its then-Executive Director and Director of Investigation Mouton (collectively referred to herein as "the Louisiana Defendants") used deceptive administrative practices, improperly destroyed evidence, disseminated false information, denied Feldman due process, and otherwise conspired to obtain the suspension of Feldman's license. *Id.*

In Count I, Feldman claims that his medical license was illegally suspended through a scheme of bribery, obstruction of justice, perjury, and fraud by LSBME, Mouton, Burdine, and Richard Stanley (a former defendant in this action and legal counsel for LSBME during Feldman's proceedings). Compl. ¶¶ 246–67. Feldman further alleges that LSBME shared the record of his suspension via U.S. wires and mail with Defendant FSMB and former Defendants California State Board of Medical Examiners and Mississippi State Board of Medical Examiners, despite knowing that the suspension was illegal and fraudulent. *Id.* Feldman claims in both instances that Defendants used their political power against him to eliminate competition and that this behavior thus constitutes a "pattern of racketeering" in violation of RICO. *Id.*

### 3. Kaul and Feldman's Joint Claim

In Count IX, the sole joint claim currently before the court, Feldman and Kaul allege that FSMB, along with other unnamed Defendants, deprived them of their due process right to apply for and maintain medical licensure via an illegal interstate compact in violation of the Compact Clause of the United States Constitution. Compl. ¶¶ 749–50.

B. **Procedural History**

    1. <u>Disposition of Prior Motions in this Proceeding</u>

On November 30, 2020, the court issued a Memorandum Opinion addressing the pending motions by the New Jersey Defendants,[8] Stanley, the Mississippi Board of Medical Licensure, and the Medical Board of California.  ECF No. 150.  The Opinion addressed two motions to sever and transfer, seven motions to dismiss, and a request for judicial notice.  The court granted the motions to dismiss brought by Stanley, ECF No. 23, the Mississippi Board of Medical Licensure, ECF No. 68, and the Medical Board of California, ECF No. 70, and likewise granted the New Jersey Defendants' motions to sever and transfer.  ECF Nos. 47, 82.  The court denied the New Jersey Defendants' motions to dismiss, ECF Nos. 47, 67, 82, 112, without prejudice and denied as moot the Medical Board of California's request for judicial notice, ECF No. 69.

    2. <u>Motions Presently Before the Court</u>

The Louisiana Defendants move to dismiss the claims against them on jurisdictional grounds, arguing that this court lacks personal jurisdiction, both as a result of insufficient service of process and because Plaintiffs have failed to allege sufficient facts to establish any source of general or specific personal jurisdiction over the Louisiana Defendants in this court.  LSBME

---

[8]  The "New Jersey Defendants" refers to all former Defendants who joined in the February 13, 2020, Omnibus Motion to Sever and Transfer, ECF No. 82, as well as those Defendants who filed an earlier Motion to Sever and Transfer or alternatively Dismiss for Failure to State a Claim.  ECF No. 47.  Thus, the New Jersey Defendants are: Allstate Insurance Company, Richard Crist, GEICO, GEICO Indemnity, GEICO General Ins. Co., GEICO Casualty, Fourth Edition Inc. f/k/a North Jersey Media Group Inc. (sued as North Jersey Media Group, Inc.), Lindy Washburn, Dr. Peter Staats, the American Society of Interventional Pain Physicians, the New Jersey Board of Medical Examiners, Former New Jersey Governor Christopher J. Christie, Dr. Andrew Kaufman, Doreen Hafner, Eric Kanefsky, Atlantic Health System, Dr. Robert F. Heary, Dr. Marc Cohen, John P. Di Iorio, TD Bank, NA, Congress of Neurological Surgeons, Hackensack University Medical Center, Robert Garrett, Howard Solomon, Gregory Przybylski, and Steven Lomazow.

also argues that it is an arm of the Louisiana state government and thus immune from liability pursuant to Eleventh Amendment sovereign immunity.

FSMB moves to set aside the default against it and to dismiss Plaintiffs' claims on the grounds that it was never served by Plaintiffs, that the default entered against it was thus improper, and that the court should therefore set aside this default and dismiss the action against FSMB.

Stolz likewise objects to an entry of default against him and moves to dismiss the claims against him on the grounds that they are barred by the February 10, 2020 Order of the U.S. Bankruptcy Court for the District of New Jersey, which permanently enjoined Kaul from pursuing claims against Stolz without leave of that court in accordance with the Barton Doctrine[9] and the Doctrine of Quasi-Judicial Immunity.[10]  ECF No. 133, Stolz Br.  Stolz argues that the Bankruptcy Court specifically indicated that the claims before this court were implicated by the injunction, *see* Stolz Br. ¶ 8, and therefore Kaul's claims against him should be dismissed in accordance with that order.

---

[9]  The Barton Doctrine, discussed further in Section III.C, *infra*, requires a party "to first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity."  *In re New Jersey Spine & Rehabilitation, P.C.*, No. 2:13-bk-23366-JKS (Bankr. D.N.J. February 10, 2020) (quoting *In re VistaCare Group, LLC*, 678 F.3d 218, 224 (3d Cir. 2012)).

[10]  The Doctrine of Quasi-Judicial Immunity, jointly with the Barton Doctrine, "grants a trustee 'broad immunity from suit' outside of the appointing court and applies 'to court approved attorneys for the trustee.'"  *In re New Jersey Spine & Rehabilitation, P.C.*, No. 2:13-bk-23366-JKS (Bankr. D.N.J. February 10, 2020) (quoting *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009); then citing *In re Summit Metals, Inc.*, 477 B.R. 424, 495–96 (Bankr. D. Del. 2012)).

## II.      LEGAL STANDARD

The court is mindful that *pro se* pleadings must be liberally construed, as they are held to "less stringent standards than formal pleadings drafted by lawyers."  *Budik v. Dartmouth–Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (internal quotation marks omitted).  Further, "[a]t the motion to dismiss stage . . . *pro se* complaints[ ] are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  However, this liberal standard "is not . . . a license to ignore the Federal Rules of Civil Procedure."  *Neuman v. United States*, 70 F. Supp. 3d 416, 422 (D.D.C. 2014) (quotation marks and citations omitted).

### A.  <u>Setting Aside Entries of Default</u>

A court may set aside an entry of default for "good cause."  Fed. R. Civ. P. 55(c).  The decision whether to do so is "vested in the sound discretion of the court."  *Baade v. Price*, 175 F.R.D. 403, 405 (D.D.C. 1997); *see also Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372 (D.C. Cir. 1980).  In determining whether good cause exists, the court considers "(1) whether defendant's default was willful; (2) whether setting aside the default would prejudice plaintiff; and (3) whether defendant has asserted a meritorious defense."  *Baade*, 175 F.R.D. at 405–06 (citing *Jackson*, 636 F.2d at 836); *see also Keegel*, 627 F.2d at 373.  When "balancing these three factors, the court must construe all ambiguous and disputed facts in the light most favorable to the moving party."  *Baade*, 175 F.R.D. at 406.

### B.  <u>Dismissal for Lack of Subject Matter Jurisdiction</u>

Federal courts are of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

"Limits on subject-matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have prescribed,' and those limits 'must be policed by the courts on their own initiative.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).  Thus, plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  But the court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept [plaintiffs'] legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  A motion to dismiss under Rule 12(b)(1) "is not limited to the allegations of the complaint," *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987), and "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F.

Supp. 2d 18, 22 (D.D.C. 2000) (citing, *inter alia*, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### C. <u>Dismissal for Lack of Personal Jurisdiction</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges the court's personal jurisdiction.  A plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendants.  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  A plaintiff must allege "specific acts connecting the defendant[s] with the forum," *Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001), including showing that "the procedural requirements of effective service of process are satisfied."  *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002).  In evaluating whether a plaintiff has established personal jurisdiction, the court "may receive and weigh affidavits and other relevant matter[s] to assist in determining the jurisdictional facts."  *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 41 (D.D.C. 2018) (quotation marks and citations omitted).  However, "when deciding personal jurisdiction without an evidentiary hearing[,] . . . the court must resolve factual disputes in favor of the plaintiff."  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017).

### III.   DISCUSSION

### A. <u>Entries of Default</u>

Defendant FSMB moves to set aside the entry of default against it and Defendant Stolz requested that this court refrain from entering a default against him.  As a default has already been entered against Stolz on the docket, *see* ECF No. 131, this court will construe Stolz's motion to likewise request that the entry of default be set aside.

1.  <u>FSMB</u>

FSMB contends that two of the three factors that this court must consider clearly support its motion, and that the third is not properly considered in this instance. FSMB Br. at 3–4. The court agrees.

First, FSMB argues that it did not and could not willfully fail to respond to the summons and Complaint where, as here, "it has not been properly served" by Plaintiffs. *See Baade*, 175 F.R.D. at 406. There is clear evidence in the record to support FSMB's contention. Although FSMB's D.C. address is on its website, *see* www.fsmb.org, Plaintiffs never attempted service at this address, and Plaintiffs' process server affirmed via affidavit that FSMB was "non-served" because FSMB was no longer present at the address to which Plaintiffs sent him. *See* ECF No. 120, Default Mot. at 25. Moreover, and despite the fact that it had not been served, FSMB promptly filed a motion to set aside default once it learned of the default filed against it. *See* ECF No. 88-1, La. Br.; *cf Baade*, 175 F.R.D. at 406. The court therefore finds that FSMB's default was not willful.

Second, FSMB argues that setting aside this default will not prejudice the Plaintiffs. The case "is still in its early stages" and "[t]he parties have not engaged in discovery." *Baade*, 175 F.R.D. at 406 (articulating factors supporting the court's finding that vacating an entry of default would not prejudice the plaintiff). Plaintiffs will therefore not be harmed if the court sets the default aside.

Third, FSMB contends that it need not show that it "has asserted a meritorious defense" at this stage. It argues that Plaintiffs' failure to properly serve the summons and complaint is a complete defense and warrants dismissal of the claims against FSMB. FSMB Br. at 4. The court finds that this does constitute a "meritorious defense" in considering whether to set aside an

11

entry of default. *See Amr v. Virginia*, 58 F. Supp. 3d 27, 35 (D.D.C. 2014), *aff'd*, No. 14-5201, 2015 WL 236822 (D.C. Cir. Jan. 16, 2015) ("[Defendant] asserts that [Plaintiff] has failed to effect proper proof of service. This defense is meritorious . . . .").

Finally, the court notes that Plaintiffs have not responded to FSMB's motion, and therefore FSMB's arguments may be treated as conceded. *Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) (when a party fails to respond to an argument raised in a motion, "it is proper to treat that argument as conceded"); *Three Lower Ctys. Cmty. Health Servs. Inc. v. U.S. Dep't of Health & Human Servs.*, 517 F. Supp. 2d 431, 434 (D.D.C. 2007) ("Plaintiff fails to respond to this argument [from Defendant's Motion to Dismiss], and therefore the Court will treat this argument as conceded"), *aff'd*, 317 F. App'x 1 (D.C. Cir. 2009); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."). The court issued a *Fox/Neal* order on August 21, 2020, in which it explained that Plaintiffs were required to file their response to FSMB's motion no later than September 10, 2020, and cautioned that "*the court may treat as conceded any arguments a defendant has advanced in support of its motion that a plaintiff fails to address in his opposition.*" ECF No. 139 (emphasis in original).

Taking all relevant factors into consideration, the entry of default will therefore be vacated.

2. Stolz

Applying the same three factors set forth by the D.C. Circuit, the court finds that the default against Stolz should also be vacated. *See Keegel*, 627 F.2d; *Baade*, 175 F.R.D.

12

First, evidence in the record suggests that Stolz's default was not willful because Stolz, like FSMB, was not properly served.  The documents submitted in support of Kaul's motion for entry of default against Stolz indicate only that "service of process was had, *via e-mail*, on [Stolz] on July 22, 2020."  Default Mot. at 3 (emphasis added).  Service on an individual defendant via email is not permitted under the Federal, D.C., or New Jersey civil procedure rules. *See* Fed. R. Civ. P. 4(e); D.C. Sup. Ct. R. Civ. P. 4(c), 4(e); N.J. Ct. R. 4:4-4.  Thus, that Stolz "failed to plead or otherwise defend" the action, Default Mot. at 3, does not constitute a willful default; "[n]o obligation to answer arose until after service was effected."  *Keegel*, 627 F.2d at 374.

Second, Plaintiffs will not be unduly prejudiced if the default is set aside.  As with FSMB, the case against Stolz "is still in its early stages," "[t]he parties have not engaged in discovery," and dispositive motions had not been filed before Stolz filed a motion to dismiss. *Baade*, 175 F.R.D. at 406.

Finally, Stolz does not clearly lack a meritorious defense.  In his motion to dismiss, Stolz claims the Barton Doctrine deprives this court of jurisdiction.  This allegation contains the requisite "hint of a suggestion" which, "proven at trial, would constitute a complete defense." *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (citations omitted).  Stolz thus satisfies the meritorious defense criterion.

Taking all relevant factors into consideration, the entry of default against Stolz will therefore be vacated.

### 3.  Judge Martinotti

This court's clerk entered a default against Judge Martinotti on July 28, 2020, in response to an affidavit submitted by Kaul.  On July 29, 2020, the United States filed a Civil Statement

Regarding Service of Process on Hon. Brian Martinotti, advising the court that Plaintiffs had not properly served the summons and complaint on Judge Martinotti. ECF No. 128. The court agrees.

First, although Kaul's affidavit indicates two different methods of service, neither constituted proper service on a United States Judge. Therefore, the default was not "willful." *See Baade*, 175 F.R.D. at 406. Kaul's affidavit indicates that "service of process was had, *via e-mail*, on [Judge Martinotti] on July 22, 2020." Default Mot. at 15 (emphasis added). However, a second document filed as part of the same motion for default—page 2 of a form AO 440—indicates that Doreen M. Bettens "personally served the summons on the individual at . . . United States District Court NJ" on December 16, 2019. *Id.* at 17. Regardless of which of these documents accurately reports the method of service, neither constitutes effective service on a federal judge. Service of process on the United States and its agencies, corporations, officers, and employees in a civil action is governed by Rule 4(i), which provides in part:

> **(1)** *United States***.** To serve the United States, a party must:
>
> > **(A)(i)** deliver a copy of the summons and of the complaint to the United States attorney for the district where the action in brought – or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk – or
> >
> > **(ii)** send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
> >
> > **(B)** send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C. [. . . .]
>
> **(2) Agency; Corporation; Officer or Employee Sued in an Official Capacity.** To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and complaint by registered or certified mail to the agency, corporation, officer, or employee.

14

> **(3) Officer or Employee Sued Individually.** To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Fed. R. Civ. P. 4(i).  Here, Judge Martinotti has been sued in both his official and individual capacities for acts connected to his duties as a United States Judge.  Yet Plaintiffs do not indicate whether the United States Attorney for the District of Columbia or the United States Attorney General has been served.  Thus "[n]o obligation to answer arose."  *Keegel*, 627 F.2d at 374.

Second, Plaintiffs will not be prejudiced by the setting aside of this entry of default, as this matter "is still in its early stages" and "[t]he parties have not engaged in discovery."  *See Baade*, 175 F.R.D. at 406.

Third, and perhaps most importantly, Judge Martinotti clearly satisfies the meritorious defense criterion.  As discussed further in Section III.E, *infra*, judicial immunity deprives this court of jurisdiction to hear claims for monetary relief against Judge Martinotti and, to the extent that Plaintiffs intended to seek prospective injunctive relief against him, they have nevertheless failed to effect proper service.

Taking all relevant factors into consideration, the entry of default against Judge Martinotti will therefore be vacated.

**B.  <u>Dismissal of Claims Against LSBME for Lack of Subject Matter Jurisdiction Due to Eleventh Amendment Sovereign Immunity</u>**

1.  <u>Legal Standard</u>

The Eleventh Amendment prohibits federal courts from hearing suits brought by private citizens against state governments without the state's consent.  U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).  Sovereign immunity applies not only to "actions in which a State is actually named as the defendant," but also to actions "against state agents and state

instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *see also P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 872 (D.C. Cir. 2008).  This bar is jurisdictional and precludes federal courts from entertaining suits against the state, "regardless of the nature of the relief sought."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

"Whether an entity is an arm of the State for purposes of sovereign immunity under the U.S. Constitution is a question of federal law."  *P.R. Ports Auth.*, 531 F.3d at 872 (citing *Doe*, 519 U.S. at 429 n.5).  In deciding that issue, "the Supreme Court and [the D.C. Circuit] have generally focused on the 'nature of the entity created by state law' and whether the State 'structured' the entity to enjoy its immunity from suit."  *P.R. Ports Auth.*, 531 F.3d at 873 (citations omitted).  The D.C. Circuit has identified three relevant factors: "(1) the State's intent as to the status of the entity, including the functions performed by the entity; (2) the State's control over the entity; and (3) the entity's overall effects on the state treasury."  *Id.*  "Under the three-factor test, an entity either is or is not an arm of the State: The status of an entity does not change from one case to the next based on the nature of the suit, the State's financial responsibility in one case as compared to another, or other variable factors."  *Id.*

2.  <u>Analysis</u>

LSBME argues that it is an arm of the state of Louisiana and thus immune from suit under the Eleventh Amendment.  In reply, Feldman maintains that "LSBME is a self-funded agency with no funds coming from the state treasury."  ECF No. 111, La. Opp. at 6.  Feldman further contends that *Ex parte Young*, 209 U.S. 123 (1908), "allows suits in federal courts for injunctions against officials acting on behalf of states."  La. Opp. at 5.  Finally, he notes that "the defendants including Burdine, Mouton and the LSBME have already acquiesced to Federal jurisdiction" in a prior case in the Eastern District of Louisiana.  La. Opp. at 5 (citing 209 U.S.

123 (1908); *Parker v. Mouton*, No. 2:15-cv-6327 (E.D. La. dismissed Dec. 12, 2016)).

Feldman's arguments are unavailing.

Applying the D.C. Circuit's three-factor test, the court finds that LSBME is an arm of the

state for purposes of Eleventh Amendment sovereign immunity. First, LSBME was created by

Louisiana statutes, and that statutory scheme shows Louisiana's intent to create LSBME as a part

of the state administrative apparatus. *See* La. Rev. Stat. §§ 37:1263 et seq.; *see also P.R. Ports*

*Auth.*, 531 F.3d at 873 (noting that the first factor to be considered is "the State's intent as to the

status of the entity"). The LSBME enacting statute provides that "[t]he Louisiana State Board of

Medical Examiners is hereby created within the Louisiana Department of Health." La. Rev. Stat.

§ 37:1263(A). Louisiana law likewise establishes that the Department of Health is a state

agency. La. Rev. Stat. §§ 36:4(a)(5), 36:251.

Second, the statutory scheme providing for the organization of LSBME further indicates

that Louisiana retains significant control over its organization and functions. *See P.R. Ports*

*Auth.*, 531 F.3d at 873 (noting that the second factor is "the State's control over the entity").

Each of LSBME's ten voting members "shall" be "appointed by the governor and subject to

Senate confirmation." La. Rev. Stat. § 37:1263. Board members are appointed for four-year

terms, but the governor may remove any member of the board for "good cause." La. Rev. Stat. §

37:1263(E)(3). And, although LSBME receives revenue from sources such as licensing fees and

fines, *see* La. Opp. at 6, ECF No. 115 at 4–5, it is statutorily "subject to budget review of the

undersecretary [for the Louisiana office of management and finance] and shall be required to

comply with all accounting, reporting, audit, and review requirements which are applicable to

budget units." La. Rev. Stat. § 36:803(A)(3); *see also* La. Rev. Stat. § 37:1263(A) (stating that

LSBME is "subject to the provisions of [La. Rev. Stat. §] 36:803"). The Louisiana executive branch thus retains control of LSBME's membership and budgetary decisions.

Third, this court must consider LSBME's "overall effects on the state treasury." *P.R. Ports Auth.*, 531 F.3d at 873. Feldman argues that "LSBME is a self-funded agency with no funds coming from the state treasury." La. Opp. at 6. He alleges that "all monies paid to plaintiff Michelle Parker in Parker v. Mouton [sic] were paid by the LSBME." *Id.* But Feldman has identified no legal or evidentiary support for this contention, and this court was unable to find any in the record in *Parker v. Mouton*, No. 2:15-cv-6327 (E.D. La. dismissed Dec. 12, 2016). There does not appear to be any specific statute expressly addressing the State of Louisiana's liability for judgments against LSBME, *see P.R. Ports Auth.*, 531 F.3d at 878 ("[T]he relevant issue is a State's overall responsibility for funding the entity or paying the entity's debts or judgments."), and LSBME has not addressed the issue in its briefing. The applicable provisions of the Louisiana Constitution and Louisiana statutes are also inconclusive. The Louisiana Constitution provides that "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature." La. Const. Ann. art. XII, § 10. Moreover, under Louisiana law, "[a]ny judgment rendered in any suit filed against . . . a state agency . . . shall be exigible, payable, and *paid only out of funds appropriated for that purpose by the legislature*." La. Rev. Stat. § 13:5109 (emphasis added). Yet the statutory scheme governing LSBME provides that "[a]ll expenses of the board and compensation of board members and employees *shall be paid out of the funds of the board only* and *shall never be a charge on the state*." La. Rev. Stat. § 37:1269 (emphasis added).

In light of this inconsistent constitutional and statutory authority, the court takes judicial notice of LSBME's Financial Statement Audit for the year ending on December 31, 2019, issued by the Louisiana Legislative Auditor.[11]  Louisiana Legislative Auditor, *Louisiana State Board of Medical Examiners: Notes to the Financial Statements for the Year Ended December 31, 2019* (July 8, 2020) [hereinafter *LSBME Financial Audit*], accessible at http://app.lla.state.la.us/PublicReports.nsf/0/5B6A4D083FF0DF5A8625859E0070EEB8/ $FILE/000207D7.pdf.  This Audit finds that "[l]osses arising from judgements, claims, and similar contingencies are paid through the state's self-insurance fund operated by the Office of Risk Management, the agency responsible for the state's risk management program, or by the state's general fund appropriation."  *LSBME Financial Audit*, at 26.  A judgment against LSBME would thus be paid from state funds, appropriated for that purpose.  The court therefore concludes that the factors outlined by the D.C. Circuit each weigh in favor of a finding that LSBME is an arm of the state entitled to Eleventh Amendment sovereign immunity.

---

[11]  This report, though not submitted by either of the parties, is located on the "Public Reports" page of the website for the Louisiana Legislative Auditor and is therefore "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and is accordingly subject to judicial notice by the Court.  Fed. R. Evid. 201(b); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) ("Specifically, a court may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty."); *see also Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) ("[W]e took 'judicial notice of facts on the public record' as a court may do upon a motion to dismiss" (citation omitted)); *United States v. Gorham*, 536 F.2d 410, 415 n.4 (D.C. Cir. 1976) ("[A] court may take judicial notice, whether requested or not and (j)udicial notice may be taken at any stage of the proceeding." (modification in original) (internal citations and quotation marks omitted)); *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (collecting cases) ("[A] court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case.").

As the court has noted in a previous opinion in this case, Feldman's invocation of the *Ex parte Young* exception is inapposite to claims against a state board.  *Ex parte Young* provides that, while "suits against state officials seeking prospective relief for violations of federal law may be permissible in federal court, suits against a state (or arm thereof) in its own right are barred, regardless of the type of relief sought."  *White v. Wash. Metro. Area Transit Auth.*, 303 F. Supp. 3d 5, 10 (D.D.C. 2018) (citing, *inter alia*, *Ex Parte Young*, 209 U.S. at 155–57; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996)); *see also Vann v. Kempthorne*, 534 F.3d 741, 749 (D.C. Cir. 2008) ("The basic doctrine of *Ex parte Young* can be simply stated.  A federal court is not barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally . . . ." (citation omitted)).  Any claims brought against LSBME as an entity are barred by Eleventh Amendment immunity and must therefore be dismissed for lack of subject matter jurisdiction.

Moreover, LSBME's purported participation in *Parker v. Mouton* does not constitute a waiver of Eleventh Amendment immunity in this case.  While the Supreme Court has held that Eleventh Amendment immunity "is an immunity which a State may waive at its pleasure," such as "by a general appearance in litigation in a federal court," "[t]he conclusion that there has been a waiver of immunity will not be lightly inferred."  *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 276 (1959) (citations omitted); *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Clark v. Barnard*, 108 U.S. 436, 447–48 (1883).  Rather, a court may find a waiver only where stated "by the most express language or by such overwhelming implications" that no other

reasonable construction may be found.  *Edelman*, 415 U.S. at 673.  Here, there is no such express language or overwhelming implication.[12]

First, the court in *Parker v. Mouton* did not find that a waiver had occurred.  In that case, defendants, including LSBME, "affirmatively pled all privileges and immunities available to them under the Eleventh Amendment" in their answer to the complaint, the first responsive filing and "earliest possible opportunity" to raise the defense.  Answer to Complaint, 3, *Parker*, No. 2:15-cv-6327; *see also Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 547 (2002) (holding that a state defendant had not "unequivocally expressed" its consent to be sued in federal court where it had "raised its Eleventh Amendment defense at the earliest possible opportunity by including that defense in its answers," even though it had not moved to dismiss the claims against it on Eleventh Amendment grounds "until July 1997, some 10 months after the federal lawsuits were filed").  *Parker* was subsequently dismissed with prejudice following a settlement between the parties, and there was no further briefing from which a waiver could be inferred.  *Parker*, No. 2:15-cv-6327.

Second, even had there been an Eleventh Amendment waiver in *Parker*, that waiver would not impact the court's analysis here.  "A federal court must examine *each* claim . . . to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

---

[12]  Louisiana law bars any waiver of Eleventh Amendment sovereign immunity in federal lawsuits.  *See* La. Rev. Stat. § 13:5106(A) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."); *see also* La. Const. Art. 1 §26 ("The people of this state have the sole and exclusive right of governing themselves as a free and sovereign state; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, pertaining thereto, which is not, or may not hereafter be, by them expressly delegated to the United States of America in congress assembled.").

Accordingly, Plaintiffs' claims against LSBME are barred by Eleventh Amendment immunity and must therefore be dismissed with prejudice for lack of subject matter jurisdiction.

**C.  Dismissal of Claims Against Daniel Stolz for Lack of Subject Matter Jurisdiction pursuant to the *Barton* Doctrine**

1.  Legal Standard

Stolz has moved to dismiss all claims against him on the grounds that they are brought in violation of the Barton Doctrine.  The Barton Doctrine is a federal common law doctrine which provides that before a plaintiff may sue a receiver in another forum for acts performed in his official capacity, the plaintiff must obtain "leave of the court by which he was appointed." *Barton v. Barbour*, 104 U.S. 126, 128 (1881); *Nat'l Ben. Life Ins. Co. v. Shaw-Walker Co.*, 111 F.2d 497, 509 n.35 (D.C. Cir. 1940).  In *Barton*, the Supreme Court explained that requiring a party with claims against the receiver to obtain permission before filing suit in another jurisdiction would help to prevent the "usurpation of the powers and duties which belonged exclusively to [the appointing] court" and protect "the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities."  104 U.S. at 128–29, 136.  Absent such leave, a district court does not have subject matter jurisdiction over the cause of action.  *Id*. at 137.

Although the D.C. Circuit has not addressed whether the Barton Doctrine applies to claims against a bankruptcy trustee in another forum, every Circuit that has spoken on the issue has found the Barton Doctrine applicable in such situations.  *See, e.g.*, *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012) (holding that the *Barton* Doctrine applies to actions brought in another court against bankruptcy trustees for acts done in the trustee's official capacity); *Lawrence v. Goldberg,* 573 F.3d 1265, 1269 (11th Cir. 2009) (same); *In re Crown Vantage, Inc.,* 421 F.3d 963, 970 (9th Cir. 2005) (same); *Muratore v. Darr,* 375 F.3d 140, 143

(1st Cir. 2004) (same); *In re Linton,* 136 F.3d 544, 545–46 (7th Cir. 1998) (same); *In re Lehal Realty Assocs.,* 101 F.3d 272, 276 (2d Cir. 1996) (same); *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993) (same); *Anderson v. United States,* 520 F.2d 1027, 1029 (5th Cir. 1975) (same).

Courts have likewise consistently held that the Barton Doctrine applies both to the trustee and to other court-appointed or approved officers—such as the trustee's counsel—who represent the bankruptcy estate.  *See, e.g., In re Lowenbraum*, 453 F.3d 314, 321 (6th Cir. 2006); *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000); *In re Delorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (Bankr. 9th Cir. 1989); *see also Howard v. Chesapeake & O. Ry. Co.*, 11 App. D.C. 300, 331 (D.C. Cir. 1897) ("The party upon whom process was served in the present case was in point of fact in the service of the receiver appointed by the decrees referred to—a party exempt from suit in this jurisdiction, without leave from the courts under whose decree he was acting.").

*i.   Analysis*

The New Jersey Bankruptcy Court held that, in bringing claims against Stolz in this case and in a case filed before the District of New Jersey, Kaul had violated the Barton Doctrine and the doctrine of Quasi-Judicial Immunity.  *See* Bankr. Op.  Consequently, the Bankruptcy Court expressly enjoined Kaul from bringing any future claims against Stolz without leave of that court and, although it noted that it likely did not have the power to enjoin pending proceedings before this court or the District of New Jersey, it nonetheless expressly stated that "the pending lawsuits . . . should be dismissed."  *Id*. ¶ 5.

This court agrees with the Bankruptcy Court and finds that Kaul's claims against Stolz are barred by the Barton Doctrine.  It is undisputed that Kaul did not obtain leave of the U.S. Bankruptcy Court before bringing this action.  It is likewise undisputed that Stolz's law firm was

appointed as counsel to the court-appointed bankruptcy trustee in July of 2014.  *See* Compl. ¶¶ 188–89; Stolz Br. ¶¶ 3, 5.  Finally, while Kaul alleges that Stolz used his position as counsel to the trustee improperly, it is clear from the face of the Complaint that Stolz's alleged wrongdoing consists entirely of actions he took in his official capacity.  *See* 11 U.S.C. § 704(a)(1) (The Trustee has a duty to "collect and reduce to money the property of the estate.").  Specifically, Kaul attests that:

- following the conversion of Kaul's Chapter 11 proceedings to a Chapter 7 liquidation, "[t]he Court appointed Defendant Stolz as the trustee to the estate," Compl. ¶¶ 188–89;

- in the course of the bankruptcy proceedings, Stolz failed to collect the majority of the outstanding accounts receivable from "Allstate and GEICO," but instead clawed back monies from "lawyers and accountants who had provided professional advice to Kaul," *id.* ¶190;

- upon conversion of the Chapter 11 proceedings to a Chapter 7 liquidation, Stolz and his former partner "threatened to file claims against Kaul . . . unless he signed over the deed to the real estate" that had previously housed Kaul's surgical center, *id.* ¶191;

- upon email request from Kaul, Stolz failed to provide details as to the status of the GEICO and Allstate collections, *id.* ¶194;

- Stolz used the U.S. mail and wires to bill and collect revenues and to send communications relating to Kaul's bankrupt business and revoked license, *id.* ¶ 402; and that

- Stolz benefitted from the alleged RICO scheme through increased revenues from legal work in the course of the Chapter 7 proceedings.  *Id.* ¶¶ 363, 372, 384, 402.

Kaul offers two arguments in reply to Stolz's motion. [13]  First, he contends that the Bankruptcy Court's order is a "fraud on the court" and is thus "legally invalid."  ECF No. 156 at

---

[13]  Kaul also sets forth allegations which this court takes to be a motion for the entry of Rule 11 sanctions against Stolz and Bankruptcy Judge John Sherwood.  Rule 11(c)(2) states that "[a] motion for sanctions must be made separately from any other motion and must describe the

5–6 (emphasis omitted).  Second, Kaul contends that the order—and, presumably, the Barton Doctrine itself—does not protect a defendant from charges of racketeering, bribery, or conspiracy.  *Id*. at 6.  Both arguments fail.

Although the New Jersey Bankruptcy Court's February 10, 2020 order enjoined Kaul from bringing future claims against Stolz and further indicated that the claims brought against Stolz in this suit were barred by the Barton Doctrine, it is the Barton Doctrine itself—not the order—which limits this court's jurisdiction.  *See generally Barton v. Barbour*, 104 U.S. 126, 128 (1881); *Nat'l Ben. Life Ins. Co. v. Shaw-Walker Co.*, 111 F.2d 497, 509 n.35 (D.C. Cir. 1940); *see also Porter v. Sabin*, 149 U.S. 473, 478–80, 13 (1893) ("It is for [the appointing] court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere.").

Kaul's unsupported assertion that the Barton Doctrine is inapplicable in cases of racketeering, bribery, or conspiracy because such acts constitute "criminal conduct" is likewise unavailing.  Courts have recognized only two exceptions to the Barton Doctrine.  The first, and most commonly invoked, is a Judicial Code provision, 28 U.S.C. § 959(a), enacted six years after *Barton* was decided.[14]  Under § 959(a), where a trustee or other court-appointed or court-approved officer is actually operating the business at issue, and the alleged wrongful acts involve the trustee's behavior in "'conducting the debtor's business in the ordinary sense of the words or

_____

specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  As neither of these requirements has been met, the court will not consider the purported motion.

[14]  Other Circuits have consistently recognized § 959(a) as a limited statutory exception to the Barton Doctrine, through which Congress implicitly affirmed the general common law rule articulated in *Barton* and its progeny.  *See In re VistaCare Grp., LLC*, 678 F.3d at 226; *In re Crown Vantage, Inc.*, 421 F.3d at 971; *Muratore*, 375 F.3d at 143; *In re DeLorean Motor Co.*, 991 F.2d at 1240–41.

pursuing that business as an operating enterprise,' an aggrieved party need not seek permission

from the appointing court before filing suit in another forum." *VistaCare Grp., LLC*, 678 F.3d at

227 (quoting *In re Crown Vantage, Inc.*, 421 F.3d at 971–72).  This exception is intended to

"permit actions redressing torts committed in furtherance of the debtor's business, such as the

common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for

example, conducted a retail store."  *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000)

(quoting *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996)).  Where a trustee "acting

in his official capacity conducts no business connected with the property other than to perform

administrative tasks necessarily incident to the consolidation, preservation, and liquidation of

assets in the debtor's estate," on the other hand, the statutory exception does not apply.

*VistaCare Grp., LLC*, 678 F.3d at 227 (quoting *Lehal Realty Assocs.*, 101 F.3d at 276); *see also,*

*e.g.*, *Crown Vantage, Inc.*, 421 F.3d at 971–72; *Muratore,* 375 F.3d; *Carter*, 220 F.3d at 1254;

*Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *DeLorean Motor Co*., 991 F.2d; *Vass v.*

*Conron Bros. Co.*, 59 F.2d 969 (2d Cir. 1932) (L. Hand, J.).  Here, Stolz was performing his

duties with regard to the liquidation of the estate's assets.  The exception created by 28 U.S.C. §

959(a) therefore does not apply.

A second, and more limited, exception to the Barton Doctrine is the so-called "ultra

vires" exception, under which the doctrine is inapplicable where "by mistake or wrongfully, the

receiver takes possession of property belonging to another."  *Barton*, 104 U.S. at 134.  Although

the D.C. Circuit has not addressed this issue, other Circuits have relied on this exception

primarily in cases where a trustee has wrongfully seized possession of a third party's assets, and

the third party has sought relief.  *See, e.g., Teton Millwork Sales v. Schlossberg*, 311 Fed. Appx.

145 (10th Cir. 2009) (holding that the ultra vires exception applied and distinguishing cases cited

by the dissent on the ground that "none of them involved an *outside party* who claimed that their assets had wrongfully been seized" (emphasis added)); *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967) ( "[A] trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation . . . without leave of his appointing court."); *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000) ("Courts which have held trustees personally liable for actions taken outside the scope of their authority, have mainly done so in matters involving a trustee's mistaken seizure of property not property of the estate, or other similar actions.").

In considering claims brought by plaintiffs involved in the underlying bankruptcy proceeding, courts have interpreted the Barton Doctrine bar to be expansive even in cases of alleged collusion, retaliation, and other improper motives.  *See, e.g.*, *Satterfield v. Malloy*, 700 F.3d 1231, 1235–36 (10th Cir. 2012) ("In suits brought by a debtor against the trustee, claims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives" and distinguishing cases in which the plaintiff was a third party to the bankruptcy proceeding); *Lawrence v. Goldberg*, 573 F.3d 1265 (11th Cir. 2009) (holding that a suit by the debtor was barred because the "essence of [plaintiff's] complaint is that the Trustee and other defendants colluded to enforce . . . an order of the bankruptcy court, and otherwise unlawfully attempted to bring assets into the bankruptcy estate" and thus the claims were "related to" the bankruptcy proceeding); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 322 (6th Cir. 2006) (articulating a presumption that "acts were a part of the trustee's duties" unless debtor plaintiff affirmatively set forth facts demonstrating otherwise, and holding that a bare allegation that a trustee's "actions were prompted by improper motives is insufficient to" overcome that presumption); *cf. Capitol*

*Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489–90 (D.C. Cir. 2009) ("A sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, . . . [including] court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors" (alterations in original) (citation omitted)). The reason for this approach is simple: allowing a debtor such as Kaul to challenge the acts of a trustee, trustee's counsel, or other bankruptcy court-appointed official before another court would go against the central purpose of *Barton*, which is to prevent one court from usurping the powers of another. *See Barton*, 104 U.S. at 136.

Pursuant to the Barton Doctrine, and because Kaul did not seek the permission of the Bankruptcy Court before bringing this lawsuit, the court does not have subject matter jurisdiction over the claims against Stolz, and his motion to dismiss will therefore be granted with prejudice.

**D.**   **Dismissal for Lack of Personal Jurisdiction Due to Insufficient Service of Process**

Burdine, Mouton, and FSMB have each moved to dismiss the claims against them on the basis that this court lacks personal jurisdiction due to insufficient service of process.[15]  *See* Fed. R. Civ. P. 12(b)(4), (5).  Plaintiffs filed their Complaint on October 1, 2019.  *See* ECF No. 1.  In late October 2019, the court reminded Plaintiffs they had 90 days from their time of filing to effectuate service and to otherwise comply with Rule 4 requirements.  *See* ECF No. 3.

1.   Legal Standard

Federal courts cannot assert personal jurisdiction over a defendant "unless the procedural requirements of effective service of process are satisfied."  *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 514 (D.C. Cir. 2002).  Under Federal Rule of Civil Procedure 4(c), a

---

[15]  LSBME also moved to dismiss the claims against it on this ground, but the court need not address this question given its finding that it lacks jurisdiction on Eleventh Amendment Sovereign Immunity grounds.  *See* Section III.B, *supra*.

"summons must be served with a copy of the complaint" within the time allowed by Rule 4(m),

which states:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

A plaintiff bears the burden of establishing either proper service of process, *see Light v.
Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987), or a "valid reason for delay" warranting an extension
of time to effect service. *Mann v. Castiel*, 681 F.3d 368, 375 (D.C. Cir. 2012) (internal quotation
marks and citation omitted). If a plaintiff fails to show good cause for failing to meet the service
deadline, "the court has a choice between dismissing the suit and giving the plaintiff more time"
to properly effect service. *Battle v. District of Columbia*, 21 F. Supp. 3d 42, 44–45 (D.D.C.
2014) (collecting cases). However, "dismissal of a case pursuant to Rule 4(m) is appropriate
when the plaintiff's failure to effect proper service is the result of inadvertence, oversight, or
neglect, and dismissal leaves the plaintiff in the same position as if the action had never been
filed." *Mann*, 681 F.3d at 376 (internal quotation marks and citations omitted).

### 2. Mouton and Burdine

Burdine contends that, more than 90 days after Plaintiffs filed this action, he had not been
served. La. Br. at 5. Mouton asserts that Plaintiffs left a package in her mailbox, which is not in
accordance with the Federal Rules of Civil Procedure, nor with D.C. or Louisiana law. *Id.*

Feldman responds that proof of proper service on each of these defendants by process
server Lyndee Moore was submitted to the court. La. Opp. at 3; ECF No. 111, Ex. 1, Moore Aff.
He further asserts that an affidavit of service shows that service was effected on Burdine at his
principal place of business on December 11, 2019. La. Opp. at 3; ECF No. 111, Ex. 3. The

29

court finds that the service described in each of these affidavits was defective.

Under Rule 4(e), service of process on an individual within the United States must be made: (1) in accordance with the law "for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; (2) by "delivering a copy of the summons and of the complaint to the individual personally"; (3) by "leaving a copy of each at the individual's dwelling or usual place of abode"; or (4) by "delivering a copy of each to an agent authorized by appointment or by law to receive service." Fed. R. Civ. P. 4(e).  The District of Columbia rules for service of process on an individual within the United States mirror the Federal Rules, but for the addition of service of process by registered mail or by first class mail with notice and acknowledgment, neither of which were attempted here.  *See* D.C. Sup. Ct. R. Civ. P. 4(c), 4(e).  Under Louisiana law, service of process on an individual likewise "may be either personal or domiciliary."  La. Code Civ. P. art. 1231.

The affidavit submitted by Feldman indicates that Lyndee Moore served Burdine via service on Melinda Olinde,[16] an employee of the Spine Diagnostic and Pain Treatment Center (the "Center").  This was neither personal nor domiciliary service, as permitted by Federal, D.C., or Louisiana procedural rules.  *See* Fed. R. Civ. P. 4(e); D.C. Sup. Ct. R. Civ. P. 4(c), 4(e); La. Code Civ. P. art. 1231.  Nor was it service on Burdine's authorized agent, in accordance with Federal Rule of Civil Procedure 4(e)(2)(C).  Burdine left Louisiana in 2019, sold his ownership stake in the Center by July of that year, and had no further affiliation with the business by the time Olinde was served there in December 2019.  ECF No. 115, Ex. 5, Burdine Decl.  Moreover, even had Burdine remained in Louisiana or with the Center, Olinde was not "authorized by

---

[16]  Moore's affidavit spells Olinde's name as "Olinda."  *See* Moore Aff.

appointment or by law" to receive service on his behalf. *See* Fed. R. Civ. P. 4(e)(2)(C).

Feldman points to no law or rule authorizing Olinde to act as Burdine's agent, and in April 2019

Burdine expressly informed the Center's staff that they were not authorized to accept service of

lawsuits or legal documents on his behalf. *See* Burdine Decl.

The affidavit of due diligence Feldman proffers regarding service on Mouton is similarly

flawed. The affiant, Lyndee Moore, attests that "the summons in a civil action and all

documents" were left in a "large envelope" "in [Mouton's] mail bucket on the front porch." *See*

ECF No. 111, Ex. 2. This does not amount to personal service, domiciliary service, or service on

Mouton's authorized agent or representative. Under the Federal Rules of Civil Procedure, as

well as both D.C. and Louisiana law, "domiciliary service" does not permit the deposit of a

document in a mailbox or on a front stoop at a defendant's residence. Rather, the procedural

rules for each of these jurisdictions allow delivery at an individual's home only if the documents

are left "with someone of suitable age and discretion who resides there." Fed. R. Civ. P.

4(e)(2)(B); D.C. Sup. Ct. R. Civ. P. 4(e)(2)(B); *see also* La. Code Civ. P. art. 1234 (permitting

such service "when a proper officer leaves the citation or other process . . . with a person of

suitable age and discretion residing in the domiciliary establishment."). Although Moore's

affidavit indicates there were numerous attempts to serve Mouton, *see* Due Diligence Aff., those

attempts are insufficient, particularly when alternate legal methods, such as service by registered

mail pursuant to the D.C. Superior Court rules, were never attempted. Plaintiffs have had ample

time since they filed their Complaint to request an extension from this court in order to properly

serve Mouton, and have been on notice at least since Mouton's motion was filed on March 5,

2020, that their service might be defective, yet have neither sought to remedy it nor sought leave

from the court to attempt service through alternate means.

In light of the foregoing, the court will dismiss without prejudice the claims against Burdine and Mouton for insufficient service of process.

    3.  <u>FSMB</u>

FSMB has likewise moved to dismiss the claims against it on the basis that this court lacks personal jurisdiction due to insufficient service of process, alleging that it was not properly served and Plaintiffs did not request more time in which to do so.  Although Kaul averred in his motion for an entry of default against FSMB that "the Defendant in this action was served," *see* Default Mot. at 24, the sworn affidavit submitted by Plaintiffs' process server makes clear that FSMB was "non-served" because FSMB was no longer present at the address to which Plaintiffs sent him.  *Id.* at 25.  The process server obtained FSMB's new address—and provided that address to Plaintiffs—but no additional attempt at service was made.[17]  *See id.*  Plaintiffs did not file an opposition to FSMB's motion.  As discussed in Section III.A.1, *supra*, when a party fails to respond to an argument raised in a motion, "it is proper to treat that argument as conceded." *See Wilkins*, 750 F. Supp. 2d at 162.

Given the evidence in the record that FSMB has not been properly served, along with Plaintiffs' failure to respond to FSMB's motion, this court will dismiss without prejudice the claims against FSMB for insufficient service of process.

    4.  <u>Lewis Stein</u>

More than a year after this lawsuit was filed, Plaintiffs have yet to serve Stein, a New Jersey-based medical malpractice attorney.  On August 17, 2020, Kaul submitted a Motion for

---

[17]  Kaul's assertion in his motion for an entry of default that "service of process was had[] via e-mail" does not rectify this deficiency.  Default Mot. at 23.  Service by email is not permitted under the Federal Rules of Civil Procedure or the local rules of the District of Columbia.  *See* Fed. R. Civ. P. 4(h); D.C. Sup. Ct. R. Civ. P. 4(g).  Furthermore, Plaintiffs have not argued that conditions exist which might warrant substitute service in this case, and the court finds none.

Entry of Default for Lewis Stein, ECF No. 137, Stein Default Mot., to which Kaul attached his own affidavit in support of the request for an entry of default and a proof of service form from process server Doreen M. Bettens.  *Id.* at 2, 4.

As the court previously noted in its August 21, 2020, Minute Order, neither the affidavit nor the certificate of service established that service of process had been effected in compliance with the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 4(e), nor did they indicate compliance with the relevant rules of the District of Columbia or New Jersey.  *See* D.C. Sup. Ct. R. Civ. P. 4(c), 4(e); N.J. Ct. R. 4:4-4.  Instead, the certificate of service states that the process server was informed that Stein was deceased, but no executor of the estate was identified.  The process server further averred, without support, that she was "sure his law firm is handling his estate or that they know how to," and indicated that service was made on an unidentified person at "Nusbaum, Stein, Goldstein, Bronstein & Kron."  Stein Default Mot. at 4.

Kaul's own affidavit merely indicates that "service of process was had, via e-mail, on [Stein] on July 22, 2020."  Stein Default Mot. at 2.  Service of process on an individual defendant via email is not permitted under the Federal, D.C., or New Jersey civil procedure rules. *See* Fed. R. Civ. P. 4(e); D.C. Sup. Ct. R. Civ. P. 4(c), 4(e); N.J. Ct. R. 4:4-4.

Despite this court's prior Minute Order denying Kaul's motion for entry of default and indicating that such denial was the result of a failure to demonstrate adequate service of process, Plaintiffs made no further attempt to serve Stein, nor have they offered any explanation for the ongoing delay.  Therefore, the court will dismiss without prejudice the claims against Stein for insufficient service of process.

5.  <u>PMB</u>

Plaintiffs have likewise failed to effect service of process on PMB.  The Complaint in this case was filed on October 1, 2019, and a summons was issued as to PMB, along with 36 other

defendants, on December 5, 2019.  *See* December 5, 2019 Docket Entry.  Yet Plaintiffs have yet

to file any proof of service in this case as to PMB, nor have they presented any "valid reason for

delay" in effecting service.  *See Mann*, 681 F.3d at 375 (internal quotation marks and citation

omitted).  The court will therefore *sua sponte* dismiss any and all claims[18] purportedly brought

against PMB on the basis that this court lacks personal jurisdiction due to ineffective service of

process.

### E. <u>Dismissal of Claims Against Metzger for Failure to Comply with Federal Rule of Civil Procedure 8(a)</u>

As this court has repeatedly reminded the Plaintiffs, although complaints filed by *pro se*

litigants are held to less stringent standards, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972),

even *pro se* litigants must comply with the Federal Rules of Civil Procedure.  *Jarrell v. Tisch*,

656 F. Supp. 237, 239 (D.D.C. 1987).  Under Federal Rule of Civil Procedure 8(a), a complaint

must contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2)

a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a); *see Ashcroft*, 556 U.S. at 678–79; *Ciralsky v. CIA*, 355 F.3d 661, 668–71 (D.C. Cir.

2004).  The Rule 8 standard ensures that defendants receive fair notice of the claim being

asserted so that they can prepare a responsive answer and an adequate defense and determine

whether the doctrine of *res judicata* applies.  *Brown*, 75 F.R.D. at 498.  "[A] complaint that is

---

[18]  Although Plaintiffs have requested, as part of their demand for judgment, that this court order "the immediate grant of a medical license to Plaintiff Kaul in the State of Pennsylvania," the Complaint does not assert a claim against PMB.  The Complaint therefore does not give "fair notice of the claim being asserted so as to permit the [PMB] the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable," *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977), and thus fails to satisfy the liberal pleading standard set by Federal Rule of Civil Procedure 8.  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet [Rule 8's] liberal pleading requirement." *T.M. v. D.C.*, 961 F. Supp. 2d 169, 174 (D.D.C. 2013).[19]

Plaintiffs' Complaint does not appear to state any claim against Metzger, who is currently President of the New Jersey Board of Medical Examiners.  Although the Plaintiffs' table of contents submits that Metzger, along with the New Jersey Board of Medical Examiners, "committed a 'new racketeering injury' against Kaul," the referenced factual discussion appears to be largely copied from a complaint in another case and does not mention Metzger, nor is he named in any of the Complaint's RICO counts.  *See* Compl. at 6, 53.  Nor does the Complaint contain any facts tying Metzger to Count IX—the only count that does not explicitly list the defendants charged.  *See* Compl. at 168.  Count IX purports to allege a violation of Plaintiffs' "due process right to apply for and maintain the property right of medical licensure in other states," consequent to an "illegal Compact Interstate Agreement and conspiracy" between state medical boards and FSMB.  Compl. at 168–69.  Metzger is mentioned in only eight paragraphs out of a 174-page Complaint, and none of those paragraphs provides a clear connection between Metzger and any interstate conspiracy amounting to a Compact Clause violation.  *See* Compl. ¶¶ 6, 14, 15, 17, 18, 54, 55, 289.

The court will therefore *sua sponte* dismiss any and all claims purportedly brought against Metzger for failure to comply with the pleading requirements set forth by Federal Rule of

---

[19]  Although not a ground for dismissal here, it is far from clear that Metzger has even been served.  Kaul's affidavit regarding Metzger merely indicates that "service of process was had, *via e-mail*, on [Metzger] on July 22, 2020."  Default Mot. at 10 (emphasis added).  Service of process on an individual defendant via email is not permitted under the Federal, D.C., or New Jersey rules of civil procedure.  *See* Fed. R. Civ. P. 4(e); D.C. Sup. Ct. R. Civ. P. 4(c), 4(e); N.J. Ct. R. 4:4-4.

Civil Procedure 8(a).

F. **Dismissal of Claims Against the Hon. Brian R. Martinotti**

    1.  Absolute Judicial Immunity

It is a well-established principle that, under federal common law, judges "are responsible to the people alone for the manner in which they perform their duties.  If faithless, if corrupt, if dishonest, if partial, if oppressive or arbitrary, they may be called to account by impeachment, and removed from office." *Randall v. Brigham*, 74 U.S. 523, 537 (1869).  They may not, however, be made responsible "to private parties in civil actions for the judicial acts, however injurious may be those acts, and however much they may deserve condemnation . . . ." *Id.* Judges are thus immune from suits for money damages for "all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993); *see also Forrester v. White*, 484 U.S. 219, 225 (1988) (affirming that claims against judges based upon "judicial acts" must be dismissed because judges are absolutely immune from lawsuits predicated on acts taken in their judicial capacity); *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 134 (D.D.C. 2013) ("[A] judge acting in his or her judicial capacity—i.e., performing a function normally performed by a judge—is immune from suit on all judicial acts.") (citations and quotations omitted).

"The scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *see also Forrester*, 484 U.S. at 227–29 (absolute immunity protects a judge for liability stemming from adjudicative acts performed in his official capacity); *Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is not overcome by allegations of bad faith or malice.").  In other words, the factors determining whether a judge was acting in his judicial

capacity "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

Underlying this doctrine is the understanding that, without judicial immunity, losing litigants like Kaul would be "apt to complain of the judgment against [them]" and "ascri[be] improper motives to the judge." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 348–49 (1871).  A "judge would risk being haled into court by the losing party in every decision he rendered, and the second judge addressing the suit against the first would risk the same if he found in favor of the initial judge." *Caldwell v. Kagan*, 865 F. Supp. 2d 35, 43 (D.D.C. 2012) (citing *Bradley*, 80 U.S. at 348–49).

This is precisely the situation before this court with respect to Judge Martinotti.  Each of the alleged actions about which Kaul complains—"obstruction" of Kaul's prosecution of a prior case before the District of New Jersey, dismissal of said case, and "judicial misconduct," all as a result of the "wrongful motive" of purported bribery—were performed in the course of Judge Martinotti's judicial duties.  Because absolute immunity protects Judge Martinotti from liability for performing his judicial duties, to the extent that Plaintiffs have purported to bring claims against him for monetary relief,[20] such claims must be dismissed with prejudice.

---

[20] Although Plaintiffs' "Demand for Judgment" requests "Compensatory + Consequential + Punitive Damages from all Defendants in their individual capacities," Compl. at 171, Judge Martinotti is only named as a defendant in Count III, which alleges violations of RICO by ten defendants. *See* Compl. at 83.  "The relevant section of RICO, 18 U.S.C. § 1964(a), provides the District Courts jurisdiction only for forward-looking remedies that prevent and restrain violations of the Act." *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1192 (D.C. Cir. 2005).  Essentially backward-looking remedies, such as damages and disgorgement, are not permitted.  Nevertheless, and to avoid any confusion, the court will dismiss all claims against Judge Martinotti for monetary relief.

    2.  <u>Failure to Effect Service of Process</u>

As discussed at greater length in Section D.1, *supra*, federal courts cannot assert personal jurisdiction over a defendant "unless the procedural requirements of effective service of process are satisfied." *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 514 (D.C. Cir. 2002). Proper service of process is governed by Federal Rule of Civil Procedure 4, which states that a "summons must be served with a copy of the complaint" within the 90 days after the complaint is filed. Fed. R. Civ. P. 4(c) & (m). Rule 4 also sets forth permissible methods for effectuating service, both in general and with respect to different defendants. *See* Fed. R. Civ. P. 4. When an officer of the United States is sued, whether in his official or individual capacity, proper service must include service on a United States attorney through one of the methods designated by the Rule. Fed. R. Civ. P. 4(i).

      Here, Judge Martinotti has been sued in both his official and individual capacities for acts occurring in connection with his duties as a United States judicial officer. Yet Plaintiffs have offered no indication that either the United States Attorney for the District of Columbia or the Attorney General of the United States has been served. Whether the summons and complaint were emailed to him, *see* Default Mot. at 15, left with an assistant or other employee of the New Jersey Federal District Courthouse—each an ineffective method of service, even as to a non-governmental individual defendant—or, perhaps, handed to Judge Martinotti in the Courthouse lobby, *see* Default Mot. at 21; *see also supra* note 21 (collecting examples of process server Bettens improperly selecting the "personally served the summons on the individual" checkbox over the course of this litigation), none of Plaintiffs' several professed methods of service constitute effective service of process on a federal judge for acts performed in connection with his duties.

      In light of the evidence on the record that Judge Martinotti and the United States have not

been properly served, this court will dismiss any and all remaining claims against Judge

Martinotti for ineffective service of process.

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT the Motion to Dismiss brought by the

Louisiana Board of Medical Examiners, ECF No. 88, and the Declaration in Opposition to

Request for Entry of Default and Requesting Dismissal Against Daniel Stolz, ECF No. 133, with

prejudice.  The court will additionally GRANT the Motion to Dismiss the claims against Dr.

Cecilia Mouton and Dr. John Michael Burdine, ECF No. 88, and the Motion to Set Aside Default

and Dismiss Plaintiffs' Complaint brought by the Federation of State Medical Boards, ECF No.

127, without prejudice.  Furthermore, the court will *sua sponte* DISMISS all remaining claims

against Defendants PMB, Lewis Stein, Scott Metzger, and Judge Brian R. Martinotti.

A corresponding order is forthcoming.


Date:  March 31, 2021


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge